# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| Dominic Washington, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18 C 50368 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| Magna Exteriors, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendant's motion for partial judgment on the pleadings [26] is denied.


## STATEMENT-OPINION

Plaintiff, Dominic Washington, brings this action against defendant, Nascote Industries, Inc., his former employer, alleging race discrimination (Count I) and retaliation (Count II) in violation of 42 U.S.C § 1981, race discrimination (Count III) and retaliation (Count IV) in violation of Title VII ("Title VII") of the Civil Rights Act of 1964, breach of contract (Count V), promissory estoppel (Count VI), negligent retention (Count VII), violation of ERISA (Count VIII) and violation of the Illinois Whistleblower Act, 740 ILCS 174/15 (Count IX). The court has jurisdiction under 28 U.S.C. §§ 1331and 1367(a). Defendant moves [26] for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on all but the Count VIII ERISA claim.

The facts are taken from plaintiff's amended complaint. Plaintiff is an African-American man who worked for defendant from December 12, 2016 until September 28, 2017 when his employment was terminated. Plaintiff was hired by defendant for a position as an assembly process engineering manager. All plaintiff's pre-employment interviews were by phone. Defendant was not aware plaintiff was African-American until he started work. Plaintiff was the only African-American employee in his department. In May 2017, plaintiff's direct supervisor, Martin Tremonti, demoted plaintiff to an inferior non-degree position as a production manager. The demotion substantially reduced plaintiff's job responsibilities. In his original position he supervised five to eight engineers and was involved in implementing new processes and Professionally-fulfilling technical discussions. After his demotion, he was required to perform demeaning tasks for long periods of time. Prior to his demotion he worked approximately 50 hours per week. After his demotion, he was forced to work for more than 80 hours per week and for several weeks without a day off.

Throughout his employment with defendant, plaintiff was subjected to racial discrimination, alienation, and humiliation. Tremonti, his supervisor, consistently used racial slurs in reference to plaintiff. On one occasion he referred to plaintiff as "Tiger Woods" in a demeaning manner. At other times he asked plaintiff if he wore a "do-rag". Plaintiff was treated differently than his white counterparts. He was denied access to professional training opportunities that similarly situated white employees had access to, even after plaintiff requested such access. Tremonti offered plaintiff's white counterparts five to seven days to relocate their families but plaintiff was only given one day to relocate his family from Indiana to Illinois. Plaintiff was subjected to humiliation when he was instructed by Tremonti to wipe down the facility, mop floors, paint bins and carts in his professional attire. Tremonti did not subject plaintiff's similarly situated white counterparts to this humiliation. Plaintiff was subjected to unequal, discriminatory treatment and a hostile work environment based on his race.

On August 25, 2017, plaintiff filed an EEOC charge of race discrimination. After receiving notice of the charge, defendant fired plaintiff in September 2017. Plaintiff asserts his termination was in retaliation for filing the EEOC discrimination charge.

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Adams v. City of Indianapolis , 742 F.3d 720, 727-28 (7th Cir. 2014) (citation omitted). All of the factual allegations of the complaint are taken as true and the complaint "must describe the claim in sufficient detail to give defendant fair notice of what the claim is and the grounds on which it rests." Guzman v. Target Corp., No. 18 CV 4508, 2018 WL 5977924, * 2 (N.D. Ill. Nov. 14, 2018). [I]ts allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." Id. "In addition, a Rule 12(c) motion is appropriate only when 'it is clear that the merits of the controversy can be fairly and fully decided in this summary manner.' Wright & Miller, Federal Practice and Procedure, § 1369 (3d ed.)." Birch|Rea Partners, Inc. v. Regent Bank , No. 18-CV-30, 2019 WL 2067358 * 1 (N.D. Ind. May 10, 2019).

The elements and proof for Section 1981 claims are essentially identical to Title VII claims and do not need to be separately analyzed. Brown v. Advocate South Suburban Hosp., 700 F.3d 1101, 1104 n.1 (7th Cir. 2012). Looking to the race discrimination claims of Counts I and III, plaintiff need only plead that his employer instituted a specified adverse employment action against him based on his race. Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008). Plaintiff alleges he was demoted because of his race. This is sufficient to give defendant "notice to enable [it] to begin to investigate and prepare a defense," which is all that is required of plaintiff. Id., at 1085.

To plead a hostile work environment claim, plaintiff need only allege the type of discrimination, the whom, and the when. Huri v. Office of the Chief Judge of the Circuit Court of Cook County, 804 F.3d 826, 834 (7th Cir. 2015). Plaintiff alleges he was harassed on account of his race, by his supervisor, throughout the course of his employment. He does not at this point have to plead facts to show "just how abusive [his] work environment was." Id.

As to the retaliation claims of Counts II and IV, plaintiff need only allege that he engaged in statutorily protected activity and was subjected to an adverse employment action. Id., at 833. Plaintiff alleges he filed an EEOC race discrimination charge and was fired because of it. Plaintiff has met his pleading requirement for retaliation claims.

Defendant argues plaintiff failed to exhaust his administrative remedies for the Title VII retaliation claim (Count IV) because he did not file a timely EEOC charge claiming retaliation.[1] However, when the plaintiff's claim is that he was retaliated against for filing the original charge of discrimination a second charge charging retaliation for filing the first charge is not a prerequisite to suing for retaliation under Title VII. Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1030 (7th Cir. 2013); Hively v. Ivy Tech Community College, No. 3:14-CV- 1791, 2018 WL 3198888, * 7-8 (N.D. Ind. May 4, 2018).

Defendant also seeks judgment on the pleadings for the state law claims asserted in Counts V, VI, VII, and IX. Count V claims breach of contract. "Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." Sevugan v. Direct Energy Services, LLC, 931 F.3d 610, 614 (7th Cir. 2019) (quotation marks and citations omitted).

The complaint alleges plaintiff received a written offer of employment on behalf of defendant from its agent Josh Gasaway effective December 12, 2016. "Under the terms of the offer: a. Plaintiff would be entitled to an annual salary of $94,000 and other benefits, including a profit sharing plan, an annual bonus and professional training opportunities; b. Plaintiff would perform the duties assigned to him by the Assembly Department Manager for each project until complete; c. Defendant could only terminate Plaintiff's employment under limited circumstances, including for cause, with appropriate notice." (Dkt # 10, ¶ 13) Plaintiff was assigned a project that was projected to last at least 6 years. "At relevant times, there existed a valid and enforceable employment contract between Plaintiff and Defendant, in which Plaintiff agreed to work for defendant until his assigned projects were completed, or for at least 6 years, in exchange for an annual salary and other benefits." (Id., ¶ 72) The complaint alleges "[o]n or about December 2, 2016, Plaintiff accepted a written offer of employment from Defendant, effective December 12, 2016, by executing a series of documents that were also signed by Defendant's authorized agents, and subsequently supplemented with other written terms." (Id., ¶ 77) "The documents that Plaintiff signed incorporated other writings that formed a promise of employment unambiguous in terms by Defendant that: a. guaranteed Plaintiff a reasonable expectation of continued employment for at least 6 years; b. entitled Plaintiff to an annual base salary, bonus pay and other benefits, including severance, profits, retirement and health care benefits." (Id., ¶ 78) Plaintiff performed all his obligations under the contract. Defendant breached the contract by terminating plaintiff without legal justification or notice before his assigned project ended, failing to pay plaintiff his wages and benefits for the entire duration of the contract, and discriminating against plaintiff on the basis of race and retaliating against him

---

[1] Section 1981 does not require the filing of an EEOC charge before bringing an action in federal court, Walker v. Abbott Laboratories, 340 F.3d 471, 474 (7th Cir. 2003), so the failure to exhaust argument is limited to the Count IV Title VII retaliation claim.

for engaging in protected activities. This breach caused plaintiff damages including lost wages and benefits.

Defendant attaches to its memorandum in support of its motion for judgment on the pleadings a copy of a letter dated November 22, 2016 ("November 22 Letter") to plaintiff from Josh Gasaway, identified in the letter as the general manager of "Magna Exteriors Belvidere, a Division of Nascote Industries, Inc."[2] The November 22 Letter begins "[i]n accordance with our recent discussions, this letter will confirm the terms and conditions of your employment with the Magna Exteriors Belvidere division" of defendant. Also attached is a page captioned "Employee Acceptance" which contains a handwritten signature above a signature line bearing the typed name "Dominic Washington" and a handwritten date of "12/1/16". Defendant contends the November 22 Letter is the "written offer of employment" referenced in paragraph 13 of plaintiff's amended complaint. This letter does not contain a provision calling for plaintiff to be employed by defendant for at least six years. It provides plaintiff can be dismissed for cause. It also provides plaintiff may have his employment terminated without cause on one month's written notice of intent to terminate or alternatively may have his employment terminated immediately and without cause providing defendant pays plaintiff in lieu of notice the equivalent of one month's base salary.

Plaintiff argues that the offer letter is not the only document on which plaintiff would rely to prove breach of contract. He contends he executed a series of documents signed by defendant's agents and subsequently supplemented with other written terms. Plaintiff maintains there are other documents related to the projects that were assigned to plaintiff which contain clear promises that are enforceable as contracts.

Plaintiff has met his limited pleading burden. While it seems improbable that after detailing in the November 22 Letter that plaintiff could be terminated without cause on one month's notice or by paying him one month's salary that defendant subsequently would agree to alter those terms to give plaintiff an "at least" six-year term of employment, it is not implausible. Whether plaintiff can prove the existence of such a contract is not a proper subject for determination on the pleadings.

Count VI asserts a promissory estoppel claim. To allege promissory estoppel under Illinois law, plaintiff must allege (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on the promise, (3) plaintiff's reliance was expected and foreseeable by defendant, and (4) plaintiff relied on the promise to his detriment. Doe v. Loyola University of Chicago, No. 18 C 7335, 2019 WL 3801819, * 2 (N.D. Ill. Aug. 13, 2019). "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking. A plaintiff can plead breach of contract and promissory estoppel in the alternative but if the court finds an enforceable contract with consideration, the plaintiff cannot recover under a promissory estoppel theory." Lozier v. Quincy Univ. Corp., No. 3:18-cv-3077, 2019 WL 409368, * 7 (C.D. Ill. Jan. 31, 2019) (quotation marks and citations

---

[2]   In his response brief, plaintiff asks the court to exclude this exhibit, but it is referenced in the complaint and is central to plaintiff's contract claim and, therefore, will be considered by the court. Mueller v. Apple Leisure Corp., 880 F.3d 890, 895 (7th Cir. 2018).

omitted). Since plaintiff has sufficiently stated a claim for breach of contract, he likewise has sufficiently pled in the alternative a claim for promissory estoppel. Id.

Count VII is a state law claim that defendant is liable for negligent retention of Tremonti. In Illinois, "employers have a duty to act reasonably in hiring, supervising, and retaining employees" and Illinois recognizes a cause of action against an employer for negligently hiring or retaining an employee "it knew or should have known was unfit for the job so as to create a danger of harm to third persons." Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 649 (7th Cir. 2017) (citation and quotation marks omitted). "To recover for a breach of that duty, a plaintiff must prove that: (1) the defendant-employer knew or should have known that an employee had a particular unfitness for his position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the hiring, retention, or failure to supervise; and (3) that this particular unfitness proximately caused the plaintiff's injury. The proximate causation element is satisfied when the employee's particular unfitness rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." Id. (citations and quotation marks omitted).

The complaint alleges Tremonti had a particular unfitness for employment as a supervisor because he "harbored racial animus towards African-Americans and retaliatory tendencies." As set out above, the complaint also alleges certain racially discriminatory actions taken by Tremonti.

Defendant argues the negligent retention claim is preempted by the Illinois Human Rights Act ("IHRA"). The IHRA provides: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). The statute provides that it is a civil rights violation "[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A). "Unlawful discrimination" is defined to include, among other things, "discrimination against a person because of his or her race." 775 ILCS 5/1-103(Q).

Whether a tort claim is preempted by the IHRA depends on "whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the [IHRA]." Richards v. U.S. Steel, 869 F.3d 557, 564 (7th Cir. 2017). "[T]he key to preemption is not whether the facts that support a common law tort claim . . . would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort independent of any legal duties created by the [IHRA]." Id. (emphasis in original) (citation and quotation marks omitted).

Plaintiff has pled a claim independent of any legal duties created by the IHRA so his negligent retention claim is not preempted. Plaintiff has pled a race discrimination claim under 42 U.S.C. § 1981. The jurisdictional limitation of 775 ILCS 5/8-111(D) "does not apply to civil rights violations defined by and arising under federal law, as those violations are outside the scope of the Act." Blount v. Stroud, 904 N.E.2d 1, 17 (Ill. 2009). In Blount, the Illinois Supreme

Court specifically held that claims brought under 42 U.S.C. § 1981 are not "civil rights violations" within the scope of the IHRA and thus are not subject to IHRA's jurisdictional limitation. Id., at 15-17. Only "civil rights violations defined by and arising under the [IHRA]" are covered by 775 ILCS 5/8-111(D)'s jurisdictional limitation. Id., at 17. Since the race discrimination allegations involving Tremonti have a basis for imposing liability (Section 1981) which is independent of any legal duties created by the IHRA, the IHRA's jurisdictional limitation does not come into play notwithstanding that the alleged facts could also support a claim under the IHRA. Richards, 869 F.3d at 564. The negligent retention claim is not preempted by the IHRA.[3]

Count IX asserts a claim under the Illinois Whistleblower Act ("IWA"). Plaintiff alleges he was fired for filing a charge with the EEOC. The IWA provides: "(a) An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. (b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15.

Defendant argues this claim is preempted by the IHRA. Retaliation for filing a charge under the IHRA is specifically identified by the IHRA as a civil rights violation. 775 ILCS 5/6-101(A). However, plaintiff's IWA claim is that he was retaliated against for filing a federal race discrimination charge with the EEOC. Plaintiff's claim is based on retaliation in violation of federal law (42 U.S.C. § 2000e-3(a) makes retaliation for filing an EEOC charge an unlawful employment practice) for his filing a federal race discrimination charge with a federal agency and the IHRA "jurisdictional limitation does not apply to civil rights violations defined by and arising under federal law, as those violations are outside the scope of the [IHRA]." Blount, 904 N.E.2d at 17. Applying Blount, this civil rights violation defined by and arising under federal law is outside the scope of the IHRA.

In Thurman v. BMO Capital Markets Corp., No. 10 C 5727, 2011 WL 1004652 (N.D. Ill. 2011), the plaintiff filed charges with both the Illinois Department of Human Rights and the EEOC. He subsequently filed a lawsuit alleging violations of the FMLA, the IHRA, and the IWA. Defendant moved to dismiss the IWA claim based on IHRA preemption. The court found Blount controlling and denied the motion to dismiss. In doing so the court stated:

---

[3] In his response brief plaintiff argues his negligent retention claim is also based on IWA retaliation. He asserts he alleged that defendant retaliated against him through one or more employees or agents in violation of the IWA and that it is "plausible that Tremonti and other Nascote employees participated in the retaliation, i.e., termination of Plaintiff's employment, because of his EEOC complaint. Therefore, his negligent retention (sic) is not preempted by the IHRA." Defendant, in its reply brief, argues plaintiff's failure to identify the other employees and agents means he failed to meet his burden to plead an employee's "particular unfitness." Looking at the complaint, it does not suggest a negligent retention claim is being based on the retention of anyone but Tremonti. Plaintiff cannot attempt to base a claim on the unfitness of anyone else without first seeking, and being granted, leave to amend the complaint to identify such other person and the person's "particular unfitness".

> Blount anchors its reasoning not in the type of independent basis
> the civil rights claim asserts but whether there is an independent
> basis at all. The presence of another source of legal duties the
> claim expressly invokes removes it from exclusive IHRA
> jurisdiction. Such a claim does not need the IHRA to satisfy its
> elements and therefore IHRA administrative proceedings
> themselves lack jurisdiction to hear the claim. Here, Plaintiff
> invokes duties outlawing retaliation furnished by FMLA and, more
> overtly, by IWA. Plaintiff need not and does not rely on IHRA as
> the source of the duties giving rise to the IWA retaliation claim
> (although, indeed, Plaintiff makes an IHRA retaliation claim in a
> separate count Defendant does not attack in its Motion).
> Under Blount the IWA claim may proceed.

Id., at * 5 (citations omitted); See also, Torres v. Merck Sharp & Dohme Corp., 255 F. Supp. 3d 826, 832-33 (N.D. Ill. 2017) (finding no IHRA preemption for IWA claim premised on retaliation for filing EEOC charge).

Defendant argues in its reply brief that Torres is an outlier and that other courts in this district have found the IHRA preempts IWA claims based on retaliation for filing charges with the EEOC. However, the cases it cites either pre-date Blount or do not discuss it. Defendant distinguishes Thurman on the basis that the plaintiff alleged retaliation for asserting his FMLA rights not Title VII rights. It argues the FMLA prohibits conduct that the IHRA does not while Title VII prohibits the same conduct as the IHRA. But, the Seventh Circuit has analyzed Blount and held it applies to Title VII claims. Dookeran v. County of Cook, Ill., 719 F.3d 570 (7th Cir. 2013).

Defendant also argues that the federal and state statutory scheme, along with the working agreement between the EEOC and the Illinois Department of Human Rights, establishes that a charge filed with the EEOC is deemed filed with the Illinois Department of Human Rights on the same date it was filed with the EEOC. Thus, plaintiff did, in fact, file a charge under the IHRA and, therefore, the IWA retaliation claim is subject to the IHRA jurisdictional preclusion. However, as Thurman observes, under Blount, "[t]he presence of another source of legal duties the claim expressly invokes removes it from exclusive IHRA jurisdiction." Thurman, at *5. Plaintiff's IWA claim is not preempted.

For the foregoing reasons, defendant's motion for partial judgment on the pleadings [26] is denied.

Date: 10/04/2019                    ENTER:


_Philip G. Reinhard_
United States District Court Judge

Electronic Notices. (LC)